## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MWH GLOBAL, INC.,                    )
                                     )
            **Plaintiff,**           )
                                     )
      **v.**                         )      **No. 15-1070C**
                                     )      **(Judge Wheeler)**
UNITED STATES,                       )
                                     )
            **Defendant.**           )

## JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, paragraph III, 4, of the Rules of the United States Court of Federal Claims (RCFC), the parties respectfully file the following joint preliminary status report:

(a)    Does the Court have jurisdiction over the action?

Plaintiff states that the Court has jurisdiction over this action.

Defendant knows of no reason to question the jurisdiction of the court to entertain this action at this time.

(b)    Should this case be consolidated with any other case?

It is plaintiff's position that the case should not be consolidated with any other case and that the defendant has not presented any legal authority as to how the Court can consolidate this case with the defendant's ASBCA case with Kenny Construction Co. which involves a completely different contract than the one at issue in this action. The plaintiff does not consent to consolidation.  The defendant's position on consolidation, provided to the plaintiff for the first time on April 4, 2016, the due date of this Joint Preliminary Status Report, is set forth below. The Contracting Officer's "Final Order" in this case erroneously indicated that plaintiff, MHW

Global, Inc., and the general contractor that constructed the project, Kenny Construction Co. ("Kenny"), were "joint and severally" liable, even though they each operated under separate and distinct contracts and operated independently of each other; their only go-between being the USACE.  Kenny sent its RFI's and variation requests directly to the USACE.  The USACE would select which inquiries from Kenny, if any, would be sent to MWH for a "recommendation" – (not a decision) and further indicated how much time MWH could spend generating such a recommendation, not to exceed two hours.  On many occasions, including the single variation request at issue in this case, MWH issued a "conditional recommendation" that relied upon certain events and certain construction activities taking place.  Unlike the USACE, MWH was not on site full time to oversee or supervise Kenny's construction, nor was it responsible for Kenny's and the USACE's QC/QA practices.  While a "recommendation" may have been made, MWH had no means to oversee whether the conditions included with the recommendation were adhered to or followed.  Kenny's ASBCA appeal was filed in December 2014, more than 15 months ago, and is well underway.  It should be heard first and then, if necessary, this case should move forward.

It is defendant's position that the case should be consolidated with a case that is currently before the Armed Services Board of Contract Appeals (ASBCA) in Appeal of Kenny Construction Co., No. 59756.  As explained in defendant's response to question (h)(2), below, Kenny Construction Co. (Kenny) is the builder of the McCook Distribution Tunnel System Project, the project at issue in this case, for which plaintiff MWH Global, Inc. (MWH) was the architect-engineer and designer.  Kenny requested a construction variation, for which MWH recommended approval.  The implementation of that variation resulted in a leak and subsequent damage.  The United States Army Corps of Engineers (USACE or agency) issued a final

decision claiming joint and several liability against MWH and Kenny.  Therefore, the two cases arise from the same set of facts and circumstances and resolution of either is inextricably tied to resolution of the other making consolidation appropriate and the most efficient course for the court and the parties.

(c)      Should trial of liability and damages be bifurcated?

Plaintiff states that liability and damages should not be tried separately.

Defendant is not aware of any reason why liability and damages should be tried separately.

(d)      Should further proceedings in this case be deferred pending consideration of another case before this court or any other tribunal?

It is plaintiff's position that further proceedings in this action should be deferred  pending resolution of Kenny's action before the ASBCA.

It is defendant's position that, the Court should order consolidation and further proceedings in this case should not be deferred.  Alternatively, if the Court does not find the combined resolution of the overlapping issues in these cases more efficient and does not order consolidation, defendant agrees with plaintiff that further proceedings in this action should be deferred pending consideration of Kenny's action before the ASBCA.

(e)      Will a remand or suspension be sought?

The parties agree that a remand should not be sought.

Plaintiff requests a suspension of the case as described, above, in response to question (d).

As explained in response to question (d), above, defendant would seek a suspension of the case, but only if the Court does not order consolidation.

(f)    Will additional parties be joined?

It is plaintiff's position that no additional parties should be joined.

It is defendant's position that Kenny should be joined as a party with MWH, pursuant to a consolidation action, as explained in response to question (b), above.

(g)    Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56?

After the parties have conducted some or all discovery, the parties may file dispositive motions in accordance with any scheduling order by the Court.

(h)    What are the relevant factual and legal issues?

The following are issues that at this time identify the dispute between the parties. Although the issues identified by each of the parties are similar, the differing views of the parties regarding some of the issues and facts have led the parties to suggest separate statements of relevant issues.  As discovery progresses, new information may become available, or new issues may become apparent, that will lead the parties to a unified set of issues, or that may cause the parties to need to supplement or amend this listing.

(1)    Plaintiff identifies the following relevant factual and legal issues:

a.    Whether flooding and other corrosive conditions occurred in the Valve Chamber, with or without sewage or combined sewer overflows (CSOs), prior to the Government's asserted discovery date of October 2, 2008.

b.    Whether the Government was aware of infiltration of corrosive water, humidity and CSOs within the Valve Chamber and/or control room and any other areas allegedly damaged.

c.    Whether MWH has any liability for the damages sought by the Government in this matter.

d.      In the event that MWH does have liability in this matter, whether MWH is jointly and severally liable with Kenny Construction Company ("Kenny") and/or the Government.

e.      Whether the damages alleged by the Government are capable of apportionment between MWH and Kenny and/or the Government.

f.      Whether Kenny and its subcontractor, Meccon, are solely responsible for the Government's alleged damages.

g.      Whether the Government's alleged damages must be reduced by its own contributory or comparative negligence in this matter.

h.      Whether the Government's alleged damages must be reduced by the contributory or comparative negligence of Kenny.

i.      Whether the Government acted promptly and exercised reasonable care and diligence to minimize or lessen its claimed damages.

j.      Whether the Government failed to mitigate its damages.

k.      Whether the Government's claims are barred by the statute of limitations.

l.      Whether the Government's claims are barred by the doctrine of laches.

m.      Whether the Government's claimed damages are reasonable and/or the result of the intervening and superseding negligence and acts of others.

n.      Whether the Government's claimed damages are the result of the intervening and superseding acts or natural causes such as moisture, infiltration of ground water, splashing on equipment, floods, and leaks attributable to causes other than Kenny's use of the Smith-Blair clamps.

o.      Whether the Government has waived its rights against MWH by accepting the Project after placing Kenny and MWH on notice of potential liability.

p.      Whether the Government is estopped from asserting that MWH is liable to it in this matter due the Government's silence and inaction.

q.      Whether the Government's claims are barred to the extent that the repairs alleged by the Government constitute betterment of the Project.

r.      Whether the Government's claimed damages must be reduced by the Government's delays and making of unreasonably priced and unnecessary repairs.

s.      Whether MWH was misled by Kenny's submittals regarding the Smith-Blair clamps and certification of same.

t.      Whether MWH was limited in its review of Kenny's submittals by budgetary limitations imposed upon MWH by the Government on design, budget and review of submittals.

u.      Whether MWH was entitled to rely upon the Government's and Kenny's QA/QC and Project oversight.

v.      Whether the Government's claim is barred by the doctrine of satisfaction and accord.

w.      Whether MWH's input was merely a recommendation based on facts provided in the submittal(s) and whether the Government was the ultimate decision maker and thus the superseding or intervening cause of the alleged damages attributed to MWH.

(2)      Defendant identifies the following relevant factual and legal issues:

a. In December 1999, the United States Army Corps of Engineers (USACE), Chicago Field Office, awarded an indefinite delivery architect engineer contract (the

MWH Contract) to MWH, Inc. (formerly Harza Engineering Co.) for engineering services for the Chicagoland Underflow Plan (CUP) McCook Reservoir.  USACE subsequently issued Task Order (TO) 0001 under the contract to MWH for design of and the provision of final plans and specifications for the CUP McCook Reservoir, Illinois Distribution Tunnel System (the Project).  The major features of the Project to be designed under the MWH Contract, TO 0001, included distribution tunnels, a distribution chamber, gates and valves, an access shaft, and a control building.

b.  In September 2002, USACE awarded a contract to Kenny Construction Co. (Kenny) to build the Project.  The Kenny construction contract incorporated the plans and specifications designed and produced by MWH for the Project.  In January 2003, Kenny began construction.

c.  In January 22, 2004, Kenny submitted a variation via Transmittal Number (TN) 15200-2, wherein Kenny requested the use of a Smith Blair Clamp in lieu of welding a flanged connection for vent pipe connections in the vent shaft.

d.  In February 2004, MWH recommended approval to USACE of the clamp variation submitted by Kenny under TN 15200-2.

e.  In January 2005, Kenny submitted another variation request, via TN 15200-22, for use of a Smith Blair Clamp.

f.  In February 2005, MWH recommended approval to USACE of the clamp variation submitted by Kenny under TN 15200-22.

g.  In October 2008, representatives of Kenny and USACE discovered a leak on the surface of a Project structure called the Concrete Monolith.  It appeared that normal operating pressures had caused damage to the monolith, which allowed Combined Sewer Overflows (CSOs) to leak out of the top of the monolith and into the Valve Chamber.  As a result of the monolith leak, hydrogen sulfide ($H_2S$) gas present in the CSOs infiltrated into the Distribution Chamber, causing corrosion to mechanical and electrical equipment in the Distribution Chamber and the Control Room.  This led to numerous equipment failures.

h.  An investigation in June 2010 revealed that operational forces within the system had caused separation of adjoining 36 inch vent pipes at the location of one of the clamps submitted and approved as a variance under TN 15200-22.  Upon review of the matter, USACE determined that the Smith-Blair clamp variation submitted in TN 15200-2 and TN 15200-22 was rated for a maximum operating pressure of 40 pounds

per square inch (psi) which is significantly less than the design pressure, the pressure encountered during operations, and the pressure rating requirements of the Kenny Contract specifications, as designed by MWH.

i.  USACE incurred numerous costs as a result of the failed vent pipe clamp and resulting leak and infiltration of CSOs into the Distribution Tunnel System, including investigation, response, and repairs to Project structures and equipment, of at least $13,434,491.42 to date.   At all times, the Government acted reasonably to minimize the excess costs resulting from the damage to the Distribution Tunnel System.

j.  In its submission of the variation requests TN 15200-2 and TN 15200-22, Kenny certified that the variations requested were in compliance with the specifications, except as specifically noted, and Kenny negligently failed to specifically note that the psi rating for the clamp was not in compliance with contract specifications.

k.  Under the terms of the MWH contract and Federal Acquisition Regulation (FAR), MWH was negligent in its recommendation to USACE to approve the variation requests submitted by Kenny under TN 15200-2 and TN 15200-22 to allow the use of a clamp with an insufficient psi rating in lieu of specified welded joints of the 36 inch vent pipes within the Concrete Monolith, as originally designed by MWH.

l.  On September 30, 2014, a USACE contracting officer issued a final decision to Kenny and MWH, finding them jointly and severally liable for the damages resulting from the negligent submittal (by Kenny) and approval (by MWH) of the variation request as set forth in TN 15200-22 to use the Smith Blair clamp in the McCook Distribution System, and demanded payment in the amount of $11,317,141.76.

m.  In December, 2015, Kenny challenged the September 30, 2014 final decision by filing a lawsuit before the ASBCA.

o.  On September 25, 2015, MWH challenged the December 28, 2014 final decision by filing the instant lawsuit in this Court.

p.  The issue to be decided in these inextricably linked cases is whether Kenny and/ or MWH are liable to the Government for costs associated with the leak and subsequent damage to the Distribution Tunnel System. Because the two cases arise from the same set of facts and circumstances and resolution of either is inextricably tied to resolution of the other making consolidation appropriate and the most efficient course for the court and the parties.

(i)     What is the likelihood of settlement?  Is alternative dispute resolution contemplated?

The parties are open to the possibility of settlement, and the use of alternative dispute resolution (ADR) procedures, such as mediation, but, at this time, the parties are not in a position to characterize the likelihood of settlement.

(j)     Do the parties anticipate proceeding to trial?

If the parties are unable to resolve the matter through dispositive motions or through settlement the parties will proceed to trial.  The parties believe that an expedited trial pursuant to paragraph 4(j) of Appendix A is not warranted.

<u>Joint Proposed Schedule</u>

Should the Court rule that this case will be consolidated, then the parties respectfully request that a schedule for briefing and discovery be postponed until such time as all parties to the case can confer and jointly propose a schedule.  Should the Court rule that this case will not be consolidated, but will be deferred or stayed, per question (d), above, then the parties agree that a schedule for discovery and briefing should not be proposed, until such time as a stay is lifted in this case.  <u>Alternatively</u>, if the Court decides that this case will not be deferred or stayed, for their proposed discovery plan, the parties respectfully suggest the following schedule to the Court,

(1) Initial disclosures:  June 17, 2016.

(2) End of non-expert discovery.  All non-expert discovery requests shall be served so that, pursuant to the Rules of the Court, the required responses and discovery shall be due or conducted no later than: October 6, 2017.

(3) Expert Disclosures:

Plaintiff proposes that: The Government's disclosure of expert witnesses pursuant to RCFC 26(a)(2)(B) shall be made on or before November 6, 2017.

MWH's disclosure of expert witnesses pursuant to RCFC 26(a)(2)(B) shall be made on or

before February 2, 2018.

Defendant proposes that: Experts shall be disclosed simultaneously by the parties on or before:  November 6, 2017.

The parties agree that Expert witness discovery shall be completed on or before April 6, 2018.

(4)  Final date for filing dispositive motions:  June 8, 2018

(5)  For depositions, plaintiff proposes that:

The limit on number of depositions be increased to 15 per party and the length of time of the depositions subject to extension by stipulation or motion.

It is defendant's position that depositions should comply with the Court's Rules 30, at this juncture.

(6) For interrogatories and requests for admission, plaintiff proposes that:

The limit on number of interrogatories be increased to 50 per party.

There be a limit on number of request for admissions to 50 per party.

It is defendant's position that interrogatories and requests for admission should comply with the Court's Rules 33 and 36, respectively, at this juncture.

(7) Plaintiff anticipates seeking a Fed. R. Evid. 502(d) Court order incorporating a non-waiver/clawback agreement.

(k)      Are there special issues regarding electronic case management needs?

The parties are not aware of any special issues regarding electronic case management needs.

(l)      Is there any other information of which the Court should be aware at this time?

The parties are unaware of any other matters which should be brought to the Court's attention at this time.

Respectfully submitted,

BENJAMIN C. MIZER
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Stephen W. Pickert                    s/ Joseph A. Pixley
STEPHEN W. PICKERT                       JOSEPH A. PIXLEY
Moye, O'Brien, Pickert & Dillon LLP      Trial Attorney
800 South Orlando, Ave.                  Commercial Litigation Branch
Maitland, Florida 32751                  Civil Division
Tel: (407) 622-5250                      U.S. Department of Justice
Fax: (407) 622-5440                      P.O. Box 480
E-mail: swpickert@moopd.com              Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 307-0843
                                         Fax: (202) 305-7643

Attorney for Plaintiff,                  Attorneys for Defendant

Of Counsel:

ANTHONY R. KOVALCIK
Moye, O'Brien, Pickert & Dillon, LLP
800 South Orlando Avenue
Maitland, Florida 32751
Telephone:     (407) 622-5250
Facsimile:     (407) 622-5440
E-mail: akovalcik@moopd.com

April 4, 2016

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of April, 2016, a copy of the foregoing "JOINT

PRELIMINARY STATUS REPORT" was filed electronically.  I understand that notice of this

filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's system.


s/ Joseph A. Pixley


_____

Joseph A. Pixley